**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE  DIVISION**

**CIVIL NO. 3:06CV465-02-T
(3:01CR151-5-T)**

| | | |
|---|---|---|
| **LAMAR REDFERN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, filed November 13, 2006, and the Government's motion to dismiss, which has been converted by the Court to a motion for summary judgment, filed September 24, 2007.

## I.  STANDARD OF REVIEW

A prisoner in federal custody may attack his conviction and sentence on the grounds that it is in violation of the Constitution or United States law,

was imposed without jurisdiction, exceeds the maximum penalty, or is otherwise subject to collateral attack. **28 U.S. C. § 2255**. However,

> [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

**Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.** The Court, having reviewed the record of the criminal proceedings, enters summary dismissal of Petitioner's motion.

## II. PROCEDURAL HISTORY

On March 27, 2003, Petitioner and four other individuals were named in a Second Superseding Bill of Indictment ("indictment") which charged Petitioner with three counts of bank robbery and aiding and abetting those offenses,[1] in violation of 18 U.S.C. §§ 2113(a) and 2 (Counts One, Four and Seven); three counts of armed bank robbery and aiding and abetting those offenses, in violation of 18 U.S.C. §§ 2113(d) and 2 (Counts Two, Five and Eight); three counts of carrying and brandishing a firearm during

---

[1]The charges against Petitioner stemmed from the armed robberies of a First Union Bank on June 26, 2001, a Bank of America on July 24, 2001, and a BB&T Bank on September 24, 2001.

and in relation to the three bank robberies and aiding and abetting those offenses, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Three, Six and Nine); and one count of possessing a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Thirteen). **Second Superseding Bill of Indictment, filed March 27, 2003**. Thereafter, the Government moved to dismiss the firearms count charged in Count Thirteen and such was granted by the Court. ***See* Motion to Dismiss, filed March 27, 2003; Dismissal Order, filed April 2, 2003.**

On April 7, 2003, Petitioner's jury trial commenced. The Government produced the testimony of 13 witnesses, including three of Petitioner's four co-defendants.[2] By their testimony, the Government established that for each of the robberies, Petitioner served as the look-out/doorman by brandishing a gun, controlling the banks' employees and customers, and ensuring that no one entered or left the bank while his co-defendants were

---

[2] Co-defendants Eric Lowery pled guilty to Counts Two, Three, Five and Six and was sentenced to 286 months imprisonment; Christopher Moses pled guilty to Counts Two, Five, Eight, Eleven and Twelve and was sentenced to 300 months imprisonment; Eric Moses pled guilty to Counts Five, Eleven and Twelve and was sentenced to 99 months imprisonment; and Timothy Moses pled guilty to Counts Eleven and Twelve, but he died prior to being sentenced and the charges against him were dismissed. *See* **Order of Dismissal, filed September 15, 2003.**

actually robbing the bank. **Transcript of Trial Proceedings, Volume I, filed March 1, 2004, at 87, 90-93, 113, 116-18, 123, 125-31, 165, 168-83 and 186**. Those witnesses further testified that at the conclusion of two of the robberies, they accompanied Petitioner to his grandmother's home where they hid some of the evidence and divided the illicit proceeds. *Id.* **at 94-96, 177**. One of Petitioner's co-defendants also explained how they had used stolen license plates on two of the get-away cars. *Id.* **at 95-96, 136**. Another co-defendant testified that he and Petitioner fled Charlotte and traveled to Atlanta, Georgia, East Orange, New Jersey, and Brooklyn, New York, after law enforcement authorities began looking for them in Charlotte, and that they returned to Charlotte and committed the third armed bank robbery when they ran out of money. *Id.* **at 183-88**. In addition, six bank tellers testified in corroboration of the co-defendants' testimony. *Id.* **at 36, 44, 52, 62, 152, and 160**.

Petitioner's former girlfriend also testified that Petitioner's lifestyle changed following the first two robberies in that he began driving rental cars and wearing different clothing; that he gave her about $150 during the relevant time period; and that she also observed him purchase a handgun from her sister. *Id.* **at 141- 45**.

Last, the Government presented testimony from two of the law enforcement officers who investigated the robberies. Those witnesses told the jury about the discovery of certain articles of clothing which the robbers were seen wearing in bank surveillance photographs, and about the discovery of one of the two stolen license plates – all of which were found in an area just outside of the home which Petitioner shared with his grandmother. *Id*. **at 76-82, 109**.

As for his evidence, Petitioner first called the other FBI agent who investigated the robbery cases. This witness stated that no efforts were made to retrieve fingerprint or other biological evidence from any of the items which were recovered from Petitioner's grandmother's yard; that he had not found any physical evidence inside that residence which directly linked Petitioner to the crimes; and that the guns which were used in the robberies never were recovered. *Id*. **at 199-211**.

Next, Petitioner's grandmother testified that one of Petitioner's cousins, co-defendant Christopher Moses, also was living in her home during the period when two of the robberies were committed; that Moses was a large-scale drug dealer who had threatened to kill her entire family, including Petitioner, over Moses' loss of a large amount of his drug profits;

that Moses believed Petitioner's sister and/or her associates had stolen that money from him; that Moses had implicated Petitioner in the bank robberies in retaliation for the loss of that money; and that she had no idea who might have placed the incriminating evidence on her property.  *Id*. at 214-19.

Last, Petitioner testified in his own defense and denied any involvement in the robberies, but he told the jury he could not remember where he was or what he was doing on the occasions of the robberies because he had no reason to remember that information.  *Id.* at 224-25, 231.  However, Petitioner did recall that he was working temporary jobs during the month in which the robberies began.  *Id. at 231-32*.  Further, Petitioner claimed, like his grandmother, that Moses had implicated him in the robberies in retaliation for Petitioner's having spent some of Moses' drug proceeds which were stolen from Moses by Petitioner's best friend.  *Id*. at 225-26.  Petitioner also admitted that in 1996, he participated in the armed robbery of a motel, supposedly due to boredom; that he was prosecuted and served time in prison for that offense; and that he changed his behavior following his release from prison.  *Id*. at 226-28.

Although Petitioner initially claimed not to have been aware of Christopher Moses' threats, he subsequently testified that after the threats were made, he and his friends purchased guns and armed themselves for protection against Moses; and that while he was in prison for the motel robbery, Moses and his friends pistol-whipped Petitioner's best friend and Moses shot that individual with a rifle in retaliation for the theft of Moses' drug money.  *Id*. **at 225 and 228-29**. On cross examination, however, Petitioner acknowledged that he also was implicated by the testimony of two of his other co-defendants who had no reason to retaliate against him; and that he had told his former girlfriend that he was planning to turn himself in – albeit because he had not done anything wrong.  *Id*. **at 234-35.**

After hearing the attorneys' closing arguments and the Court's instructions, the jury deliberated for a little more than two hours before convicting Petitioner on all charges.  **Verdict Sheet, filed April 9, 2003**. Thereafter, Petitioner's attorney filed a motion for a judgment of acquittal claiming that the Government's failure to name one of the co-defendants in the second superseding indictment (because that co-defendant already had pled guilty by the time such third indictment was filed) caused the jury to be confused and erroneously to convict Petitioner.  **Motion For**

**Judgment of Acquittal, filed April 14, 2003**.  However, the Court denied

that motion on the ground that its supplemental instructions were sufficient

"to dispel any confusion that may or may not have existed on the part of

the jury."  **Order, filed April 28, 2003**.

Defense counsel also filed a motion for new a trial and mental health

evaluation on the grounds, *inter alia*, that following the trial, Petitioner

revealed that he had been on antidepressants since September 2002, and

alleged he had been denied the medication by the jailers during the trial

proceedings; that Petitioner regularly saw mental health counselors at the

Mecklenburg County Jail during several months of his pretrial confinement;

and that when Petitioner was 13 years old, he was treated at a county

mental health facility for a "psychological episode."  **Motion for New Trial**

**and Mental Health Evaluation, filed June 11, 2003.**  The Court denied

that motion finding that no documentation had been provided showing

Petitioner had been prescribed the alleged medication, and that the Court's

observations of Petitioner during the trial had not revealed any irregularities

in his behavior, but instead demonstrated Petitioner ably assisted in his

defense.  **Order, filed June 17, 2003**.

Just prior to sentencing, counsel filed a motion for a competency hearing due, in part, to Petitioner's "aberrant behavior" that included destruction of property at the jail and had resulted in him being placed in isolated confinement.  **Motion to Determine Competency of Defendant, filed November 14, 2003**.  The Court denied the motion on the grounds that Petitioner's destruction of property was not an indicator of his inability to understand the proceedings, or the lack of his ability to cooperate or rationally consult with counsel; and counsel had failed to establish a nexus between the absence of his medication and Petitioner's inability to assist with his case.  **Order, filed November 18, 2003.**

On December 1, 2003, Petitioner appeared before the undersigned for a sentencing hearing during which defense counsel essentially asked the Court to impose the lowest possible sentence because the Petitioner was not a "key player" in the robberies and the Government failed to produce evidence that he, in fact, possessed a gun during the crimes. **Transcript of Sentencing Hearing, filed January 29, 2004, at 3**.  The Government did not oppose a sentence at the low end of the Guidelines for the bank robberies in view of Petitioner's mandatory, consecutive sentences of  57 years imprisonment for the gun violations.  ***Id*. at 4.**  Thus,

pursuant to the relevant statutes requiring consecutive mandatory minimum terms of seven, 25 and 25 years imprisonment on the firearms convictions under Counts Three, Six, and Nine, along with the 92 to115-month Guidelines term for the armed robberies under Counts Two, Five and Eight (Offense Level 26, Criminal History Category IV), the Court sentenced Petitioner to a total of 776 months imprisonment.  *Id*.  Last, the Court struck the jury's verdict on the robbery convictions under Counts One, Four and Seven because they merged into the armed robbery convictions for sentencing purposes.  **Judgment in a Criminal Case, filed December 22, 2003**.

Petitioner timely appealed to the Fourth Circuit Court of Appeals. **Notice of Appeal, filed December 1, 2003**.  On appeal, Petitioner argued that this Court erred in denying his motions for judgment of acquittal and for a mental evaluation and that his sentence violated the then-recently announced rule from *United States v. Booker*, 543 U.S. 220 (2005), because it was based, in part, on facts which were not found by the jury beyond a reasonable doubt.  ***United States v. Redfern*, 142 F. App'x 673, 674-75  (4th Cir. 2005).**  The appellate court held, however, that the testimony from two of Petitioner's co-conspirators and Petitioner's

girlfriend, along with the other physical evidence, provided substantial evidence of his guilt. *Id.* **at 674**. Likewise, the Circuit determined that this Court did not err in denying Petitioner's motion for a mental competency evaluation in that Petitioner had failed to present anything more than speculation and inconclusive allegations concerning his mental state; that there was no unusual behavior or obvious lack of understanding or participation by Petitioner in his defense; and that this Court properly relied upon its courtroom observations of Petitioner. *Id.* **at 675**.

However, the Circuit agreed with Petitioner's argument that his sentence was imposed in violation of *Booker* to the extent that his sentence for the armed robberies was enhanced, in part, on the basis of certain factual determinations which were not found by the jury. *Id.* Accordingly, the Fourth Circuit affirmed Petitioner's convictions, but vacated his sentences and remanded his case for a reassessment of the Guidelines calculations. *Id.*

Following the remand of Petitioner's case, newly appointed counsel filed a motion for a downward variance seeking a reduction of his sentence to 684 months imprisonment on the ground that the nature and circumstances of the offenses warranted a lower sentence. **Defendant's**

**Motion for Variance, filed January 24, 2006**.  However, the Court rejected that argument and re-sentenced Petitioner to three concurrent 12-month terms of imprisonment on the armed robbery convictions (Counts Two, Five and Eight), to a consecutive term of 84 months imprisonment on the first firearm conviction under Count Three, and imposed two consecutive 300-month terms for the other firearms' convictions under Counts Six and Nine, for a total of 696 months imprisonment.  **Amended Judgment in a Criminal Case, filed February 8, 2006**.  Petitioner did not appeal his new sentence.

Rather, Petitioner filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 arguing that his trial attorney was ineffective for having stipulated that the banks were FDIC insured, and for having failed to seek the severance of the bank robbery charges for separate trials; and that this Court erred in allowing defense counsel to stipulate to an element of the offense which the Government otherwise was required to prove.  **Motion to Vacate, *supra*.**  In response, the Government filed a motion to dismiss, which this Court converted to one for summary judgment, arguing that it is entitled to a judgment as a matter of law because Petitioner's claim against this Court procedurally is barred, and his claims against counsel are

factually and legally baseless. **Government's Motion to Dismiss, filed September 24, 2007;** *see also*, **Government's Answer to Petitioner's Motion, filed September 24, 2007**.

## III.  DISCUSSION

**A.    Petitioner's claim against the Court is barred by his procedural default of that issue**.

By one of his three claims, Petitioner argues that this Court erred in allowing his attorney to stipulate that the banks which he was charged with robbing were insured by the FDIC, an essential element the Government was otherwise required to prove to the jury beyond a reasonable doubt. However, this claim, is procedurally defaulted.

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack.

*United States v. Mikalajunas*, **186 F.3d 490, 492-93 (4th Cir. 1999) (citing** *United States v. Frady*, **456 U.S. 152, 167-68 (1982));** *see also* *Bousley v. United States*, **523 U.S. 614, 621 (1998) (***habeas* **review is an extraordinary remedy and will not be allowed to do service for an**

**appeal; and failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same);** *Stone v. Powell*, **428 U.S. 465, 477 n.10 (1976)** .

Although Petitioner filed a direct appeal prior to his re-sentencing, he did not raise or even mention the instant claim against the Court. Furthermore, although Petitioner was re-sentenced, he still did not bother to file a second appeal in which he could have raised the claim.  More critically, Petitioner has not attempted to articulate cause and prejudice to excuse his procedural default.  Notwithstanding the fact that the Government raised Petitioner's procedural default in its *de facto* motion for summary judgment, Petitioner's Affidavit in response thereto does not address his failure to raise this claim on appeal.

Moreover, Petitioner's protestations of innocence cannot somehow be construed as an attempt to overcome his procedural default with an actual innocence allegation since the jury considered and rejected the veracity of those protestations.   Accordingly, Petitioner's procedural default of this claim cannot be excused; therefore, his unexcused default divests the Court of the authority to adjudicate this claim.

**B.    Petitioner's claims of ineffective assistance of counsel are baseless**.

Petitioner alleges that trial counsel was ineffective for having stipulated that the three banks were FDIC insured, thereby allowing the Government to circumvent its obligation to prove that element to the jury; and that counsel was ineffective for having failed to seek the severance of the three robberies so that each could have been tried separately.

When alleging a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  ***Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)**.  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  ***Id*. at 689**; ***see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1985)**; ***Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983)**; ***Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977)**.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "'*actual* and substantial disadvantage, infecting his trial with error of constitutional dimensions.'"  ***Murray v.**

***Carrier*, 477 U.S. 478, 494 (1986) (quoting *Frady*, 456 U.S. at 170).**

Under these circumstances, Petitioner "bears the burden of proving

*Strickland* prejudice." **Fields, 956 F.2d at 1297 (citing *Hutchins*, 724**

**F.2d at 1430-31).** Therefore, if Petitioner fails to meet this burden, a

"reviewing court need not consider the performance prong." **Id. at 1290**

**(citing *Strickland*, 466 U.S. at 697)**.

Petitioner vigorously argues that counsel should not have stipulated

to the FDIC insured status of the banks, particularly without his consent;

however, Petitioner has failed to forecast any evidence which shows that

he was prejudiced by that stipulation. The decision by trial counsel to

stipulate to "such a trivial and easily proven matter[]" is a tactical decision

which is entitled to the presumption of reasonableness. ***See Poole v.***

***United States*, 832 F.2d 561, 564 (11th Cir. 1987).** In addition, the record

contains the Witness and Exhibit Lists which the Government filed on April

7, 2003, reflecting that the Government was prepared to introduce into

evidence the appropriate FDIC certificates for each of the banks, and to

call as witnesses those persons through whom such documentary

evidence would have been introduced. Thus, the Government was in a

position to prove this element without the subject stipulation.

Moreover, Petitioner's argument that counsel's decision to stipulate denied him a fair trial also is legally baseless. The subject stipulation did not constitute an admission of guilt, but rather an agreement concerning easily provable facts. As such, this Court finds that had counsel chosen not to stipulate to these facts, his decision would not have aided Petitioner but merely would have prolonged the inevitable introduction of such proof.

Furthermore, Petitioner's argument that he was unaware of the stipulation is belied by the record. Specifically, the record reflects that Petitioner was present at the time his attorney conferred with the Government's counsel concerning the content of the stipulation, and that he sat silent as the stipulation was read into the record. **Trial Transcript, Vol. I,** *supra***, at 35-36**. Such silence is not difficult to understand inasmuch as the apparent defense strategy was not to deny that the banks were FDIC insured or even that they were robbed, but that Petitioner was not a perpetrator and/or he simply was a victim of what is known as "guilt by association." Ultimately, therefore, given the reasonableness of counsel's decision, Petitioner's belated attempt to challenge the stipulation must be flatly rejected.

Similarly, Petitioner cannot establish any prejudice in connection with his claim that counsel should have sought separate trials for the three bank robberies. The Rules permit the joinder of separate offenses in an indictment and trial when such offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." **Fed. R. Crim. P. 8(a).** In most cases, the Fourth Circuit has interpreted the "common scheme or plan" prong of Rule 8(a) flexibly, requiring simply "that the joined offenses have a logical relationship to one another." ***United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (noting that "Rule 8(a) permits very broad joinder because of the efficiency in trying the defendant on related counts in the same trial")) (internal quotations and citations omitted)**. In other words, Rule 8(a) permits joinder when the offenses involve acts which are united by the "substantial identity of facts or participants." ***United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1988)**.

Conversely, severance is required under Rule 14 of the Federal Rules of Criminal Procedure when "there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or

innocence." ***Zafiro v. United States*, 506 U.S. 534, 539 (1993)**. That is, severance is required when there is a risk of prejudice resulting, in part, either from a possibility that "the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated"; or when the jury might "conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." ***United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)**. However, "where evidence of one crime is admissible at a separate trial for another, it follows that a defendant will not suffer any additional prejudice if the two offenses are tried together." *Id.* Under those circumstances, therefore, severance would not be required.

In *Foutz*, the Fourth Circuit was asked to review a defendant's motion for a new trial based upon an allegation that he was prejudiced by the joinder in a single trial of two separate bank robberies. The Court noted that other than the fact that the same bank was robbed twice, there were few similarities. For instance, the first robbery allegedly involved Foutz as a lone robber, but the second involved a trio of robbers; in the first robbery, Foutz allegedly fled on foot while the second robbery involved a

get-away car; in the first robbery, Foutz allegedly played the role of the "bag man" who vaulted the counter and retrieved the money, but in the second robbery, he played the role of the armed look-out man who posted himself at the door during the robbery; and the first robbery occurred approximately three months before the second. *Id.* **at 737**.

Therefore, the Fourth Circuit determined that because "the differences between the crimes [were] more striking than the similarities," if the cases had been tried separately, the Government would not have been permitted to use evidence from one of the robberies to prove the defendant's identity as the perpetrator of the other. *Id.* Consequently, the Court found that the defendant had been subjected to reversible error which entitled him to new, separate trials on both robberies. *Id.* **at 738**.

In the instant case, the first two robberies occurred almost exactly one month apart, on June 26, 2001 and July 24, 2001, and the third robbery occurred exactly two months to the date after the second, on September 24, 2001. *See* **Second Superseding Bill of Indictment,** *supra.* The offenses involved consistent role playing by three of the four robbers in that Petitioner was alleged to have served as the armed look-out man *in each robbery*; his cousin, Christopher Moses, was a bag man who

retrieved the money *in each robbery*; in two of the three robberies, a third defendant, Eric Moses, drove the get-away car; and Petitioner provided the location for the robbers to meet and divide the proceeds following two of the three robberies.

Based on the foregoing, the undersigned finds, unlike the facts in *Foutz*, there were enough similarities in these offenses that this Court would have permitted the Government to introduce evidence of the other robberies in the trial of any one of them in order to establish Petitioner's identity as one of the perpetrators. Finally, as the Fourth Circuit determined, the co-conspirator testimony, which was corroborated by other witnesses and documentary evidence, constituted "substantial evidence" of Petitioner's guilt on all of the charges. ***Redfern*, 142 F. App'x at 674**. Therefore, Petitioner cannot possibly demonstrate that he was prejudiced by the joinder of the three robberies in a single trial. ***See United States v. Clayton*, 450 F.2d 16, 19 (1st Cir. 1971) (approving the joinder of drug trafficking and importation charges in a single case, pointing out that the defendant's prosecution was "not an instance where a weak evidentiary case and a strong one were joined in the hope that an overlapping consideration of the evidence would lead to convictions**

**on both.")**.  Accordingly, Petitioner's claim that counsel should have sought the severance of these cases also must be rejected.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Respondent's motion to dismiss, converted to one for summary judgment, is **GRANTED,** and Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED.**  A Judgment dismissing this action is filed herewith.

Signed: March 4, 2009

Lacy H. Thornburg
United States District Judge